**Savra Shepard, Plaintiff-Appellee, v. City of Aurora, Defendant-Appellant.**

**Gen. No. 10,796.**

Second District.

February 17, 1955.

Released for publication March 8, 1955.

13

14

Charles A. Darling, corporation counsel, of Aurora, for appellant.

Ruddy & Brown, of Aurora, for appellee; Clarence J. Ruddy, and Robert E. Brown, both of Aurora, of counsel.

MR. JUSTICE CROW delivered the opinion of the court.

This is an appeal by the defendant, City of Aurora, from a judgment for the plaintiff upon a verdict of

$1,500 recovered by the plaintiff in the city court of Aurora, on account of injuries resulting from a fall alleged to have been caused by an unsafe and dangerous condition of a public sidewalk. The defendant claims, as error, (1) the denial by the trial court at the close of the plaintiff's evidence and at the close of all the evidence of its motions for a directed verdict in favor of the defendant; (2) improper admission of certain evidence; and (3) the denial by the trial court of the defendant's motion for a new trial. The defendant made no motion for judgment for the defendant notwithstanding the verdict.

The witnesses for the plaintiff were Evelyn Clover, manager of the Neumode Hosiery Shop (the incident here having occurred just west of the entranceway thereof), Dr. Richard K. Collins, the plaintiff herself, and Jackson Shepard, her brother. The evidence of Dr. Collins and Jackson Shepard is not material to this appeal. The evidence for the defendant was a stipulation as to the plaintiff's testimony on a pretrial deposition and a stipulation as to certain physical circumstances at the scene of the accident. No witnesses testified for the defendant.

The material evidence is to the effect, in substance, that on October 29, 1951, the plaintiff was employed by the S. S. Kresge Co., as a floor supervisor and buyer, at its store in Aurora; was 44 years old, unmarried, and weighed 145 pounds; the day in question was a fair fall day and the sidewalks were dry. About 1:30 p. m., after lunch and before returning to her work, she walked to the Neumode Hosiery Shop on the north side of Fox street, just west of Fox and Broadway, and after making a small purchase there, left the store, walked south out upon the entranceway (which had a flat sloping decline of 6½ inches in its entire length from the doorway to the sidewalk line, a distance of 4½ feet), looked ahead and proceeded to the

16

west, around the corner of the west show window of Neumode, and while walking on the public sidewalk, and intending to go to the next store west, called the Connie Shoe Store, caught her foot on something that threw her out in the middle of the sidewalk, severely injuring her elbow and arm. Plaintiff was wearing a "Shenanigan" shoe with a walking heel of leather about 1¾ inches high. Fox and Broadway is one of the busiest corners in downtown Aurora.

In the sidewalk area immediately west of the entranceway to the Neumode store, over which she walked, was a metal trap door, approximately 5 feet square, composed of two sections that open up and out, the sections being closed at the time. The metal trap door had a metal flange around it. There was a raise or elevation of about 1½ inches in the northeast corner of the flange of the trap door up close to the west show window of Neumode. The raise appears to have been a gradual matter starting part way back or south along the east edge of the flange. The sidewalk in front of Neumode is 10–12 feet wide. The trap door opens into the basement of Neumode. It had, however, not been used for five years. The plaintiff had not seen the trap door or elevation therein before the date of the accident, and had not been in front of the Neumode store for a long time prior to October 29, 1951. Evelyn Clover, manager of Neumode, stated that other people had stumbled on the trap door within two months prior to October 29, 1951.

There is no positive, direct evidence as to how the accident happened. Plaintiff says that her foot got caught on something that threw her out on the sidewalk. It would seem to be a fair inference that, in passing along the portion of the sidewalk concerned her shoe did not clear the 1½-inch raise in the trap door at the point in question, she tripped, lost her balance, and fell.

17

The defendant says, correctly we believe, that the evidence does not show that the concrete or slab, as such, of the sidewalk in the area around the trap door was broken, or in any way itself out of repair; nor does it show that the trap door itself was broken or out of repair (other than as may be reasonably inferred from the abnormal circumstance of the raised portion of the northeast corner of the flange thereof); nor is there any showing what occasioned the approximately 1½-inch raise of that corner of the trap door. The defendant urges that, as a matter of law, plaintiff was guilty of contributory negligence; the defect here was trivial and inconsequential, no reasonable mind could foresee that this accident would occur, and defendant was not negligent and was under no duty to repair; the evidence of prior occurrences of other people stumbling at the trap door was not admissible; and that the verdict and judgment are contrary to the manifest weight of the evidence. The defendant very briefly and mildly suggests also there was no actual or constructive notice to it of the condition of the sidewalk, but it does not stress that argument, and we believe the record sufficiently indicates constructive notice. The plaintiff relies on testimony to the effect that in using the sidewalk she had to pass over the trap door; that the raised portion of the trap door was at the point next to the west show window; and that the raised portion thereof was a defect in the sidewalk, which was concealed from plaintiff's vision by the corner of the west Neumode display window, as she proceeded towards the Connie store next door. With reference to the raise in the trap door, upon cross-examination, she said she could not recall looking down at that particular moment, that she was looking straight ahead, but—"if I was glancing down, I probably would have seen it." The plaintiff claims the issue as to her due care was properly a fact issue for the jury; that the defect here was such that a reasonable

18

person could foresee possible injury to a pedestrian under these circumstances while exercising reasonable care; and the evidence of prior occurrences was admissible and the defendant waived any alleged error as to such admissibility by making only a general objection, which was overruled.

 After reviewing the record in this case, we believe the jury could properly find, under all the circumstances, that the plaintiff was not guilty of contributory negligence as a matter of law. She had no reason to suspect the presence of the raised portion of the trap door before she stepped on it. Although required to use ordinary and reasonable care to avoid danger, a pedestrian is not obliged, as a matter of law, to keep his eyes glued to a sidewalk in search of defects and dangerous places, but may normally assume it is in a reasonably safe condition for travel: Graham v. City of Chicago, 260 Ill. App. 590, affirmed 346 Ill. 638; City of Chicago v. Babcock, 143 Ill. 358. Whether a plaintiff is guilty of contributory negligence is ordinarily a question of fact for a jury. It becomes a question of law only when the evidence is so clearly insufficient to establish due care that all reasonable minds would reach the conclusion that there was contributory negligence: Ziraldo v. W. J. Lynch Co., 365 Ill. 197. Such is not the case here.

 It appears that the plaintiff was walking at a normal rate of speed, not hurrying or running; she was looking straight ahead, evidently not inattentive or heedless to what she was doing and where she was going; that the particular place she was walking is a regular part of the traveled public sidewalk and she had a right to be where she was. Though she was not looking down at the precise moment of the incident, she was not necessarily required, as a matter of law, to be looking down at that precise moment, although that circumstance might properly be considered, with all the other relevant circumstances in evidence, by the

19

jury in reaching its determination as to due care. The particular path of travel she was following would seem to be normal for a westbound pedestrian, i. e., towards the right or show window side of the sidewalk, particularly so for a party coming out of one store and proceeding to the next store immediately west. The jury could find that a party under those circumstances would not normally, and certainly not necessarily, swing out a considerable distance into the sidewalk, and perhaps around the trap door, but might quite properly walk rather close to the show window side of the sidewalk and across the portion where the trap door was. She was not loaded down with a lot of heavy or bulky bundles or parcels in her arms which might have impeded her progress, impaired her vision, or distracted her attention.

 Upon the record, as to the facts, our inquiry and that of the trial court in regard to the defendant's motions for a directed verdict, is whether, as a matter of law, when all the evidence in favor of the plaintiff is considered, together with all reasonable and legitimate inferences and intendments to be drawn therefrom, in its aspect most favorable to the plaintiff, and when considered to be true, is there any evidence tending to prove the essential elements of the alleged cause of action and might the jury reasonably have found for the plaintiff: Ziraldo v. W. J. Lynch Co., supra; White v. City of Belleville, 364 Ill. 577.

 We think there is substantial evidence in support of the charge that an unsafe condition of the public sidewalk, brought about by this raised edge of the flange of the trap door, did exist at the point in question where the accident occurred, that there is evidence tending to prove the essential elements of the alleged cause of action, and that the jury could reasonably have found for the plaintiff. There is evidence on behalf of the plaintiff which, standing alone, entitled

20

her to have the cause submitted to a jury: White v. City of Belleville, supra.

In City of Chicago v. Babcock, 143 Ill. 358, at page 363, the court said:

"A person passing along a sidewalk in a City is required to use ordinary and reasonable care and diligence to avoid danger, but what is such ordinary and reasonable care depends upon the circumstances of each particular case, and is a question of fact for a jury. A pedestrian upon such sidewalk may ordinarily assume that the sidewalk is in a reasonably safe condition for travel. To hold that such person is absolutely bound to keep his eyes or her eyes constantly fixed on the sidewalk in search for possible holes or other defects, would be to establish a manifestly unreasonable and wholly impracticable rule."

We think Walter v. City of Rockford, 332 Ill. App. 243, one of the principal cases referred to by the defendant, is clearly distinguishable from this case as to the facts. The principles of law and their application to the facts of that case were entirely correct. The present case, however, is not a situation simply of some irregularity, perhaps slight, and perhaps oft occurring, in the surface of a public sidewalk, or of a difference simply in levels, sometimes caused by weather or similar circumstances, between two adjoining portions or slabs or blocks of a sidewalk. In Walter v. City of Rockford, supra, the plaintiff apparently had a clear, unobstructed view of at least 15 feet of the claimed defect in the sidewalk, there was a box and some boards surrounding a fresh piece of cement a few feet from the claimed defect which should have called her attention to the circumstances, and she was walking with a friend and talking as she walked along. The plaintiff here had no such view, was not put on notice, and was walking alone. Nor do we believe the other

21

Illinois cases cited by the defendant apply to the case at bar. In Powers v. City of East St. Louis, 161 Ill. App. 163, there were involved two adjoining segments of a sidewalk having a difference in levels between them of 1 to 3 inches and having a bevelled edge between the two levels; the difference in height of the segments could be easily seen by a pedestrian for 50 feet or more; there was nothing inherently dangerous therein; there was no concealed defect; and the plaintiff had just prior to the accident and at another point about 25 feet away stepped down on the same walk from the same higher level to the same lower level. In Fleming v. City of Rockford, 303 Ill. App. 224, the plaintiff was walking along with her daughter, the daughter was pushing a baby buggy, the plaintiff was keeping her eyes on a car being pushed along a filling station driveway, because of fear it would strike the buggy, she did not look at the sidewalk, and she was guilty of contributory negligence as a matter of law. In White v. City of Belleville, 284 Ill. App. 322, there was a depression in the sidewalk at a point where the walk had been previously broken and repaired and there were some crevices left by detachment of the repaired part from the rest of the walk; a judgment for the plaintiff was reversed without remanding in the Appellate Court on the basis there was no negligence of the defendant; but this was reversed in the Supreme Court, 364 Ill. 577, the court holding that a directed verdict for defendant would not have been proper, and that it was a jury case; the Supreme Court remanded to the Appellate Court to consider other errors, if any, and either affirm or reverse and remand for a new trial; subsequently, 290 Ill. App. 616 (abst.), the Appellate Court affirmed the judgment for the plaintiff. We have heretofore referred to the Supreme Court opinion, 364 Ill. 577, and White v. City of Belleville, under the circumstances, is authority for the plaintiff's rather

22

than the defendant's position here. City of Chicago v. Norton, 116 Ill. App. 570, involved simply a difference in level of 2½ to 3 inches between two adjoining flagstones in a sidewalk, and the court said that at that date, 1904, such differences in level might be found in almost every sidewalk in Chicago, that danger therefrom was not in common experience to be anticipated, the sidewalk was (1904) reasonably safe, and the defendant was not negligent. In Bleiman v. City of Chicago, 314 Ill. App. 471, the plaintiff, whose left knee and leg were stiff and rigid because of a prior injury, caught that leg on a ½-inch projection of a steel plate above a curb at a driveway, the plate connecting the driveway with the street and resting on the curb and the pavement, where it was fastened, while walking from the building out to the street and curb line, and the court held the verdict for the plaintiff was conclusive as to the plaintiff's due care but that the driveway was reasonably safe and the defendant not guilty of negligence.

The case at bar is a case of a defective projection upwards of the corner of the flange of a trap door in the sidewalk, partially concealed from view by a corner of a display window, where the public might reasonably assume was a normal, level segment of the sidewalk. We cannot say as a matter of law that the particular condition was of such a trivial character that it was not naturally dangerous (as some of the cases have referred to some situations), or that it was a condition such as must almost inevitably occur in the many street miles of a city (as some other cases have referred to some other conditions). We believe the particular condition of this sidewalk here was such that a reasonably prudent man should anticipate some danger to persons walking upon it while exercising reasonable care for their own safety and that the jury could find negligence.

23

In City of Taylorville v. Stafford, 99 Ill. App. 418, affirmed 196 Ill. 288, the plaintiff tripped and fell over a wooden stub in a plank sidewalk, which stub projected about 2 inches above the level of the sidewalk, the dimensions of which stub at the top where it so projected were 1¾ by 2 inches, and which had been in that condition some four or five weeks before the accident. A judgment for the plaintiff was affirmed by the Appellate Court and by the Supreme Court. Among other things, the Appellate Court said, 99 Ill. App. 418, at 419:

"It is vigorously contended that the stub was of such infinitesimal proportions that the city should not be charged with negligence for allowing it to remain in that condition. We can not take that view of it. It was of such proportions as to cause appellee to fall and break her arm. Several other persons had stumbled over it; one witness had, but a few hours before appellee was hurt. It was a menace to persons traveling over the walk by night or by day; and it had been in existence for such a length of time as to justify an inference of notice to the city authorities."

In Miranda v. City of Collinsville, 206 Ill. App. 166, (abst.) the plaintiff tripped and fell over some steel pipes in and projecting and protruding some 6 inches above the surface of a sidewalk. A judgment for the plaintiff was affirmed. The abstract reads, in part, p. 167:

"Where certain steel pipes projected about six inches above a sidewalk at its outer edge on a public street of a city and were allowed by the city to so remain for several years, *held* that a finding that such condition was a menace to persons traveling over the walk and had existed for such a length of time that the city should take notice thereof and remedy it was justified, in an action to recover damages for injuries sustained thereby."

And these general principles, as stated in Vol. 9, Illinois Law and Practice (Cities, Villages, etc.), pp. 42, 48, 57, and 62 should also be kept in mind:

P. 42. "A municipality may be held liable in damages for a failure to comply with its duties with respect to keeping its streets in proper condition for the use of the public, and it may be held liable for any defects or obstructions in the streets which render the streets dangerous for the ordinary modes of travel."

P. 48. "The duties and obligations of a municipality with respect to keeping a sidewalk in repair are similar to those imposed on it with respect to the remainder of the street."

P. 57. "The degree of care which a municipality is required to exercise to keep any particular street in a reasonably safe condition depends to some extent on the location of the street and the character and extent of the use to which it is put."

P. 62. "In general, obstructions or defects in streets or sidewalks, in order to subject the municipality to liability, must be of such a nature that they are in themselves dangerous, or such that a person exercising ordinary prudence cannot avoid danger or injury in passing them."

It is within the province of the Appellate Court to reverse and remand for a new trial, if a verdict and judgment of the trial court are against the manifest weight of the evidence: White v. City of Belleville, supra. But we do not believe the verdict and judgment here are against the manifest weight of the evidence, and hence we do not find any error of the trial court in refusing the defendant's motion for a new trial.

Some complaint is also made by the defendant of the admission of the testimony of Mrs. Clover, of the Neumode store, as to prior occurrences

25

of other people stumbling over the trap door within a couple of months prior to the accident here concerned. We believe this evidence, though somewhat slight, and though the interrogation at that point was perhaps not as detailed, clear, or direct as might be desired, was nevertheless admissible as a fact for the jury to consider, not for the purpose of showing independent acts of negligence, which would be improper, but as tending to show the common cause of the accidents to be a dangerous, unsafe condition or thing: City of Bloomington v. Legg, 151 Ill. 9. We believe there is competent evidence in the record reasonably tending to show that the condition of the trap door was substantially the same at the time of the prior occurrences as it was on October 29, 1951, when the present incident occurred. Mrs. Clover, a witness for the plaintiff, testified that the raised corner of the trap door was there during a two-month period prior to the incident here involved, and there is no evidence of any change in the circumstances during that two-month time. The evidence was also admissible as tending to show constructive notice to the defendant: City of Bloomington v. Legg, supra. Further, such objections as the defendant made to any of this line of questioning were only general objections; they did not point out anything definite and specific; these general objections were overruled; and, hence, the defendant cannot now insist upon them; the trial court and the opposite party are entitled to know what, if any, specific objection there is to the evidence offered; if competent for any purpose, the party objecting must call to the attention of the court specifically any claimed limitations thereon: DeMarco v. McGill, 402 Ill. 46; City of Chicago v. Stearns, 105 Ill. 554.

We find no reversible error in the matters claimed by the defendant-appellant, and the judgment will be affirmed.

Affirmed.