George I. and Rose A. Cohn, and Royal Insurance Company, Subrogee of George and Rose Cohn, Plaintiffs-Appellants, v. Petroleum Heat and Power Company, a Corporation, and Leonard Lewandowski, Defendants-Appellees.

Gen. No. 48,948.

First District, Second Division.

October 29, 1963.

Clausen, Hirsh, Miller & Gorman, of Chicago (Jerome H. Torshen, of counsel), for appellants.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (John M. Moelmann, Leonel I. Hatch, Jr. and Karl M. Tippet, of counsel), for appellees.

MR. JUSTICE BRYANT delivered the opinion of the court:

Plaintiff-appellant, Royal Insurance Company, as subrogee of plaintiffs-appellants, George and Rose Cohn, appeals from a judgment entered on a jury verdict for the defendants, Petroleum Heat and Power Company and its agent Leonard Lewandowski, in the Municipal Court of Chicago on February 23, 1962.

The plaintiffs-appellants allege four errors below: (1) that the court erred in refusing to direct a verdict for the plaintiffs because the defendants were negligent as a matter of law; (2) that the court erred in submitting the question of contributory negligence to the jury; (3) that the court erred on the admission of certain documents as evidence; and (4) that the court erred in giving certain of defendants' instructions.

This action was brought for damages to a twenty-two unit apartment building located at 11 West Pearson, Chicago, caused by a fire which occurred on January 13, 1956. The fire was caused by the vaporization and fractionation of fuel oil which spilled over the top of the plaintiffs' oil storage tank through a loosened manhole cover 21½ inches wide located at the top of the tank. The defendant oil company through its deliveryman Lewandowski had delivered oil to the premises about two hours before the fire occurred. The defendant's driver Lewandowski had returned to the premises immediately before the fire began to pump the spilled oil out of the pit adjacent to the combustion chamber and back into the truck. Lewandowski had returned at the request of the oil company which had been advised of the overflow by Mr. Dutile, the husband of the building manager. Both Lewandowski and Dutile witnessed the combustion of the spilled oil and both unsuccessfully attempted to quench the flames.

26

■ The principal controversy in this case centers around the conduct of the driver Lewandowski. There is no argument as to what actions Lewandowski performed. The argument concerns the legal significance of those actions.

It is undisputed that Lewandowski was an experienced oil delivery driver who had delivered to the premises in question on numerous previous occasions. The building had recently changed ownership and the defendant had been retained to deliver oil on a "keep fill" basis. Lewandowski had delivered 200 gallons of oil on December 4, 1955; 500 gallons on December 10, 1955; 500 gallons on December 23, 1955; 700 gallons on January 6, 1956; and 604 gallons on January 13, 1956.

Lewandowski testified that he usually entered the basement before filling the tank for the purpose of measuring the amount of oil which would be required to fill the tank. Since the tank regulator was defective, Lewandowski usually inserted a measuring stick through the top of the tank after removing the cap of the defective oil gauge. On January 13, Lewandowski was unable to gain entrance into the basement of the building. He, therefore, made an "alley delivery" and determined how much oil would be needed to fill the tank by means of a "loose fitting." Lewandowski testified that a "loose fitting" was performed by attaching the nozzle on the hose to the pipe protruding from the basement by means of an elbow in a loose way so that pressure built up inside the tank would cause oil to spurt out at the nozzle thereby signaling that the tank was filled. Lewandowski testified that he had used the "loose fitting" method before.

On January 13, there was no "gurgle" in the pipe or a "spurt" of oil. Lewandowski emptied his truck into the tank (604 gallons). The Cohns' tank had a

27

capacity of 1500 gallons. This delivery occurred during a cold period when a high consumption of fuel oil over a weekly period would not be unrealistic.

Lewandowski testified that he knew that the fuel gauge was defective but that he had no knowledge that the manhole cover was not tightly secured. There was conflicting testimony concerning whether the oil company had notice of the loosened manhole cover through its sales agent who had talked with the Cohns concerning a "maintenance" contract for the Cohns' oil tank.

■ The plaintiffs-appellants contend that the actions of Lewandowski constituted negligence as a matter of law and therefore a verdict should have been directed for the plaintiffs. The duty of an oil company and its agents in the delivery of oil is to use ordinary care and they are bound to use caution commensurate with the known danger. Loverde v. Consumers Petroleum Co., 327 Ill App 210 (abst) (opinion, p 9), 63 NE2d 673.

We reaffirm the general rule as set forth in the Loverde case but do not find that Lewandowski acted flagrantly in disregard of ordinary care as a matter of law. On the contrary it is clear that the conduct of Lewandowski presented a jury question. The keep fill contract provided that the oil company should get a "signature where possible." There are no facts here to suggest that Lewandowski deviated at all from the standard procedure in an oil delivery. He tried to get into the building. Only when he was unable to gain entrance did he resort to the alternate method. To hold that Lewandowski's conduct constituted negligence as a matter of law would mean that no oil delivery could be made without entrance into the basement and an examination of the oil storage facilities.

Whether it is reasonable for an oil delivery agent to forego an exact measurement of the depth of oil in

28

a tank in the exercise of ordinary care is a question of fact to be decided by the jury considering the special circumstances in which the incident arose. Only where there is an absence of probative facts to support a jury verdict is it reversible error for a trial judge to overrule a motion for a directed verdict or a motion for judgment notwithstanding the verdict. Manion v. Chicago, R. I. & P. Ry. Co., 12 Ill App2d 1, 138 NE2d 98; Lindroth v. Walgreen Co., 407 Ill 121, 94 NE2d 847. The question of whether Lewandowski used ordinary care in the delivery of the oil was properly a question for the jury.

■ Appellants next contend that the court improperly sent the question of the contributory negligence of the Cohns to the jury. Their position is that the loosened manhole cover was merely a passive condition which alone constituted no negligence whatsoever. Their contention is that Lewandowski had a duty to measure the tank from the inside of the basement. If he had done so no oil would have spilled over the top regardless of the loosened cover.

We have found above that Lewandowski was not required in the exercise of ordinary care to enter into the basement for the purpose of making an exact measurement of the depth of the oil in the tank as a matter of law. In addition the jury below found as a matter of reasonableness in this situation that there was no breach of the duty to use ordinary care on the part of the defendants.

Beyond this it is well settled in Illinois that "where one furnishing bulk products does not install the receptacle for those products, or the pipes connecting such receptacle with the source of supply necessary to fill them, and does not own or have control over them, he is not responsible for their condition or their maintenance and cannot be held liable for injuries caused by an accident arising out of a defective con-

29

dition of such receptacle or its equipment, in the absence of knowledge of such defect." Allegretti v. Murphy-Miles Oil Co., 363 Ill 137, 142, 1 NE2d 389; Clare v. Bond County Gas Co., 356 Ill 241, 190 NE 278.

■ The appellants seek to avoid the impact of the Allegretti case by contending that the loosened manhole cover did not constitute a defect but rather was a passive condition. We agree that in determining whether plaintiffs' conduct will bar their rights to recover for their loss, there must be kept in mind the distinction between that which directly and proximately produces, or helps to produce the result, as an efficient cause, and that which is a necessary or attendant circumstance of it. Bonnier v. Chicago, B. & Q. R. Co., 2 Ill2d 606, 119 NE2d 254; Russell v. Richardson, 302 Ill App 589, 24 NE2d 185; 28 ILP, Negligence § 102, p 90. It is still necessary, however, to determine whether there was a lack of due care on the part of the Cohns and if so whether it constituted a cause proximately contributing to the injury. Arendt v. Tallman, 10 Ill App2d 66, 134 NE2d 120; Buehler v. White, 337 Ill App 18, 85 NE2d 203; Fechtner v. Vanderwall, 339 Ill App 143, 89 NE2d 66; 28 ILP, Negligence § 102, p 89. It is undisputed that the Cohns knew that the manhole cover was not in working order. One of the tests of proximate cause is whether the party charged had a duty reasonably to foresee or anticipate the consequences of his own negligence. Neering v. Illinois Cent. R. Co., 383 Ill 366, 50 NE2d 497; 28 ILP, Negligence § 105, p 93.

■ All of the problems briefly mentioned above require inferences to be made from the facts for a determination. This has always been held to be the province of the jury. Schiff v. Oak Park Cleaners & Dyers, Inc., 9 Ill App2d 1, 11, 132 NE2d 416; Ney v. Yellow Cab Co., 2 Ill2d 74, 117 NE2d 74. In order for a court to determine as a matter of law that omissions

30

or acts of a party constitute a passive condition rather than a contributing proximate cause there can be no room for any other reasonable inference from the facts. The case of Oregon Mut. Fire Ins. Co. v. Mayer, 211 Ore 556, 316 P2d 805, which the appellants cite, was such a case. In that case a fire started because gasoline ran down the natural incline of the land into a restaurant. Certainly no one would say that it would be foreseeable to the owner of land that a third party would independently spill gas which would then run for a substantial distance because of the lay of the land. In the cases of Storen v. City of Chicago, 373 Ill 530, 27 NE2d 53 and Jilek v. Missouri Pac. R. Co., 13 Ill App2d 518, 142 NE2d 708 (cases dissimilar in fact) the courts dismissed the defendants because they found that not more than one inference could be reasonably drawn.

In the present case we believe that since the Cohns knew of the condition of the tank there was a question of foreseeability present from which an inference of either proximate cause or absence of proximate cause could be drawn. Whether the condition of the tank at the time of the fire be called defective or not is a semantical problem. There is no doubt that a tank with its cover unbolted is not in a condition to function for the purpose for which it was manufactured. Whether the maintenance of the tank in this unbolted condition constituted negligence, a defect or a passive condition is a question of fact. These questions were properly presented to the jury when they were directed to consider the question of contributory negligence.

■ Appellants next allege that instructions 12, 13, 16, 17 and 18 were erroneously given and are grounds for reversal. Instructions 12 and 13 were standard instructions on contributory negligence. We find no error in admitting these instructions because as we

have shown above the question of contributory negligence was properly presented to the jury.

■ Instruction 16 listed alternate methods of computing plaintiffs' damages. Appellants contend that there was only one appropriate method of computation. We do not need to decide which or whether both are appropriate since this instruction cannot be considered reversible error under any theory. The error went to the issue of damages rather than to the issue of liability. Since no liability was found, the jury was not required to consider this instruction.

■ Instruction 17 is objected to as being peremptory in that it states that if the jury believes that the defendant has proved any of five enumerated defenses a verdict shall be found for the defendant. Such peremptory instruction comes from the bench and is afforded an aura of importance and credibility that the court should never intend to convey. See 8 DePaul Law Review 141, 143. This kind of instruction has been heartily condemned in the Illinois courts, but is often not found to be reversible error. The courts will only reverse on this ground where an undue number or an inordinate amount of these instructions have been given or it appears that the case of the opposing party has been severely compromised or misstated. See Scerrino v. Dunlap, 14 Ill App2d 355, 144 NE2d 859; Randal v. Deka, 10 Ill App2d 10, 134 NE2d 36; Stone v. Warehouse & Terminal Cartage Co., 6 Ill App2d 229, 127 NE2d 260; Loucks v. Pierce, 341 Ill App 253, 93 NE2d 372; Chism v. Decatur Newspapers, Inc., 340 Ill App 42, 91 NE2d 114; Baker v. Thompson, 337 Ill App 327, 85 NE2d 924; Alexander v. Sullivan, 334 Ill App 42, 78 NE2d 333; City of Lake Forest v. Janowitz, 295 Ill App 289, 14 NE2d 894; Daubach v. Drake Hotel Co., 243 Ill App 298; and Nelson v. Chicago City R. Co., 163 Ill App 98. In this case only instruction 17 could be termed peremptory. Two parts

of that instruction are merely restatements of the plaintiffs own instruction number (1). See West Chicago St. R. Co. v. Scanlan, 168 Ill 34, 48 NE 149; Bobalek v. Atlass, 315 Ill App 514, 537, 43 NE2d 584. The other three defenses included in the instruction stated the defendants' position in the case. It is elementary that both parties are entitled to instruct the jury as to their theory of the case. Defenses (c) and (d) presented to the jury the two primary factual controversies of the case: 1. Whether the defendant had a duty other than pouring oil into the fill tank; 2. Whether the Cohns had provided a proper receptacle or tank for the delivery of oil. Neither one of these defenses inaccurately stated a legal proposition nor compelled the jury to find one way or another. Only the jury was qualified to find whether the ordinary care standard of the Loverde case was violated or whether the defective tank of the Allegretti case existed here. Defense (c) could have been phrased better, but we believe that the jury understood the issue which was presented to them. Modern tendency favors a liberal application of the harmless error doctrine to instructions when it appears the rights of the complaining party have in no way been prejudiced. Bunton v. Illinois Cent. R. Co., 15 Ill App2d 311, 146 NE2d 205; Kavanaugh v. Washburn, 320 Ill App 250, 50 NE2d 761; Reivitz v. Chicago Rapid Transit Co., 327 Ill 207, 158 NE 380.

Appellants complain of defendants' instruction 18 because it was modeled after instructions in the Allegretti case (supra). Appellants believe that to be error because under their reading of Allegretti the phrases "defect" and "assuming the supplier was otherwise properly handling the oil without negligence" were elements that are not present in this case. We have already pointed out that both of these phrases presented questions of fact upon which the jury should

properly rule. A party is entitled to instructions on his theory of the case providing it correctly states the law of the matter. Sims v. Chicago Transit Authority, 7 Ill App2d 21, 129 NE2d 23. Here there is no inaccuracy on the law of the case and the factual differences, if any, were before the jury for determination. We find no reversible error in the instruction submitted to the jury.

 Another error urged by the appellants is that copies of defendant's oil burner service policy were improperly admitted into evidence. The Cohns had applied for a service policy but it was not in force at the time of the fire. The appellants contend that the exculpatory language of the policy improperly prejudiced the jury against the case of the plaintiffs. It appears to us that from the testimony no doubt could have existed in the jury's mind that the Cohns did not own such a policy. Under the circumstances the admission of this evidence is not prejudicial.

 The last error alleged by the appellants is that they were not allowed to develop by way of cross-examination the circumstances surrounding the negotiations for the Cohns' purchase of the building and relative to the adjustment of the insurance loss. Although, a party is entitled to introduce any competent evidence to further a successful determination of the litigation, the court in its discretion may refuse to allow testimony on the grounds of irrelevancy. Here the testimony sought to be elicited was irrelevant and the court properly refused to admit it. We do not feel that the court abused its discretion in refusing the cross-examination desired.

From our study of the record of the case below and an examination of the particular errors raised in the brief of the appellants, we feel that the trial was car-

ried on in a fair manner and that there is no substance to the objections urged by the appellants. For these reasons we affirm the judgment of the lower court.

Judgment affirmed.

BURKE, P. J. and FRIEND, J., concur.