VERNON RAY, Admr. of the Estate of Kimberly Maria Ray, Deceased, *et al.*, Plaintiffs-Appellants, *v.* COCK ROBIN, INC. *et al.*, Defendants-Appellees.

(No. 71-278;

Second District—February 23, 1973.

*Rehearing denied March 29, 1973.*

DIXON, J., concurring in part and dissenting in part.

Fred Lambruschi, of Chicago, for appellants.

Pretzel, Stouffer, Nolan & Rooney, and Hubbard, Hubbard, O'Brien & Hall, both of Chicago, (Joseph B. Lederleitner, of counsel,) for appellees.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

This action was brought in the Circuit Court of DuPage County by the administrator of the estate of Kimberly Maria Ray, deceased, and three minor children by their mothers and next friends, as against Cock Robin, Inc., Edward Zawacki, d/b/a North Grace Super Sinclair Service, and Edwin and Delores Cholewa individually. The action was instituted by reason of the fact that the automobile driven by Edwin Cholewa entered upon the business premises of Cock Robin, Inc., and struck a wooden

bench on which the deceased minor, Kimberly, and three other minor plaintiffs were seated. The cause was tried before a jury. On appeal the plaintiffs-appellants principally assigned erroneous rulings on evidence which they assert prevented them from presenting their case fairly, and also complained that counsel for one of the appellees made an improper argument. There is also error claimed in the direction of the verdict on liability as to defendant Cholewa.

On June 3, 1968, Cock Robin, Inc., owned and operated a drive-in ice cream establishment at the southwest corner of a T-intersection of River Road and Cherry Street in River Grove, Illinois. River Road is a north-south main artery of travel with four traffic lanes, two in each direction. Cherry Street is an eastbound one-way street ending at River Road.

Cock Robin's building faced River Road and, judging from a pictorial exhibit in the record, sat back about a distance of 20 feet from a sidewalk running parallel with River Road. Between the sidewalk and the road was a grass parkway about four feet in width, except at a point about even with the south side of the building where there was a driveway into a parking area. The north side of the building was within a few feet of a sidewalk running east and west, parallel with Cherry Street. There was no curbing along Cherry Street and the parkway between the sidewalk and the street had been blacktopped, as had been the area in the front and to the south of the building. In the open area between the building proper and the sidewalk along River Road, which area appears to be about 20 x 30 feet, Cock Robin had placed a bicycle rack and three wooden picnic tables. At the south edge of this area there were concrete vertical bumper blocks, of the kind commonly used in parking lots, to separate the picnic area from the parking area to the south. On the Cherry Street side of the picnic area there were no blocks or barriers of any nature to close off the area or to impede the progress of a vehicle.

About four months prior to the occurrence, Edwin Cholewa purchased a 1959 automobile for $200, and about a week before the occurrence took it to a service station owned by Edward Zawacki for a tire repair and a brake adjustment. According to evidence given at the trial, both the brakes and the tires were in extremely defective condition. It appears also that the vehicle was equipped with power steering. On the afternoon of June 3, 1968, at about 4:00 o'clock, Cholewa was driving the car south on River Road. As he approached the Cherry Street intersection, the car veered off the road diagonally to the right and continued on a path which took it across Cherry Street, across the blacktopped parkway and the sidewalk along Cherry Street and into the picnic area in front of the Cock Robin building. In the picnic area it struck the bicycle rack and one of the picnic tables, hit a pole supporting a canopy in front of

the building and continued on into the parking lot south of the building where it struck another car. Seated at the picnic table which was struck, eating ice cream just purchased at the drive-in, were Victoria Nicoletti, age 9, Tina Nicolleti, age 1½, Janet Spain, age 7, Kimberly Ray, age 4½, and Denise Ray, age 9. Denise Ray escaped injury, but Kimberly Ray received injuries from which she died about a week after the accident. The other three girls were seriously injured.

At the trial Cholewa testified that he was traveling about 35 miles an hour on the inner southbound lane of River Road, when, at a point about ⅓ of a block from Cherry Street, he noticed traffic congestion ahead, and that he put his foot on the brake pedal and found he had no brakes. He said he first tried to steer the car into a forest preserve along the east side of the road but could not do so because of northbound traffic; that he then noticed Cherry Street and turned sharply to the right intending to turn into Cherry Street; that as he did so he "had no wheel and couldn't turn" sharply enough; that if he could have turned more he would have made it down Cherry Street. The car then continued into the picnic area. He conceded on cross-examination that he had not shut off his engine and that he had not attempted to use his emergency brake.

A suit was brought on behalf of the deceased child and the injured children in which the defendants were Cholewa, Cock Robin, Inc. and Zawacki. At the conclusion of all the evidence, the trial court directed a verdict against Cholewa on the issue of liability, and the jury thereafter returned a verdict, upon which judgment was subsequently entered, finding in favor of Cock Robin and Zawacki and assessing damages against Cholewa in favor of the following: Janet Spain—$76,500; the administrator of the estate of Kimberly Ray—$12,000; Victoria Nicoletti—$6500; and Tina Nicoletti—$4400.

As previously noted, it is the plaintiffs who have prosecuted this appeal. It is their first contention that the trial court erred when, on the motion of Cock Robin, it refused to permit the testimony of Sheldon Schaumacher, an expert witness tendered by plaintiffs. On the offer of proof, to the extent relied upon by the brief of plaintiffs, it was stated that the witness, a traffic engineer with extensive experience in the traffic aspects of drive-in businesses, would express opinions that any area within 30 feet of a roadway is considered most dangerous; that the placement of the picnic tables in the present case created an inherently dangerous condition; that the effect of guard rails, or barricades or blocks along the northern or Cherry Street side of the picnic area would have been to slow down or deflect a vehicle entering the premises from that side; and that the Cock Robin premises as they existed on June 3,

1968 constituted a dangerous and hazardous condition and did not comply with safety rules or engineering safety standards. The rules and standards referred to were not further identified, nor do they appear in the record.

■■ The matter of expert testimony has been frequently considered by courts of review in this jurisdiction and, as stated by the court in *Miller v. Pillsbury,* 33 Ill.2d 514, 516, "*   *   *   the trend is to permit expert testimony in matters which are complicated and outside the knowledge or understanding of the average person, and even as to matters of common knowledge and understanding where difficult of comprehension and explanation." As stated by the court in *Abrahamson v. Levinson,* 112 Ill.App.2d 42.50: "There must be a need apparent from the record in the case for scientific knowledge, expertise and experience, which will aid the jury to a correct and a just result." The trial court here ruled there was nothing complicated or difficult to comprehend with regard to the conditions caused by the location of the picnic area, and in this day of the drive-in and the automobile, as well as frequent traffic mishaps, we are inclined to agree.

■■ Photographic evidence in the record portrayed quite clearly and accurately the location of the picnic area in relation to the nearby streets, and in our opinion the average person could know and comprehend, without the assistance of expert testimony, that the location of the area could in some instances expose the picnic area to the dangers of traffic proceeding along River Road and Cherry Streets, and that guard rails, barriers or blocks along or in front of the north line of the picnic area would have the effect of slowing, stopping or deflecting a vehicle coming onto the premises from that direction. The decisions relied upon by plaintiffs are not pertinent. In *Miller v. Pillsbury,* 33 Ill.2d 514, there were no eyewitnesses qualified to testify to an accident in which the drivers of the colliding vehicles both perished, and under the circumstances expert testimony reconstructing the accident was deemed to be permissible; in *Merchants Bank of Aurora v. Elgin, Joliet & Eastern Ry. Co.,* 121 Ill.App.2d 445, where a train-truck collision at a crossing in an industrial area was involved, it was held that the interaction of lighting conditions, retroflection, traffic and weather factors, relative speeds of trains and vehicles, and distraction elements were of sufficient difficulty of comprehension and explanation to justify the assistance of expert testimony; and, finally, in *Sutkowski v. Universal Marion Corp.,* 5 Ill.App.3d 313, involving a mammoth strip mining shovel, this court held that an expert should have been permitted to testify to design alternatives which could and should have been installed at the time of the manufacture of

the machine. Comparable circumstances, complexities and matters were not involved in the present case, and we thus find no error in the ruling of the trial court on this issue.

■■ Plaintiffs also contend that the court erred in refusing an offer of proof by Thomas Lambert, a non-expert, who would have testified that he had, in the fall of 1968, noted the location of the picnic area and the heavy traffic on River Road, and that he had told the man in charge of the drive-in that the condition was dangerous and that a guard rail should be put up to protect people at the tables. This contention, however, has not been pursued by argument or the citation of pertinent authority and will be deemed to have been abandoned. *Quinn v. Larson*, 77 Ill.App.2d 240; *Flynn v. Vancil*, 41 Ill.2d 236.

■■ The law is well settled that evidence of prior accidents, occurring at the same place or with the same instrumentality, is competent, not for the purpose of showing independent acts of negligence, but for the limited purposes of showing that the common cause of such accidents was the unsafe condition or thing, and that the frequency of such accidents tends to show knowledge of such condition. (*E.g., Moore v. Bloomington, Decatur and Champaign R.R. Co.*, 295 Ill. 63, 67; *Smith v. City of Rock Island*, 22 Ill.App.2d 389, 399; *Lineen v. City of Chicago*, 310 Ill.App. 274, 283; *Shepard v. City of Aurora*, 5 Ill.App.2d 12, 26.) Based upon this rule it is plaintiffs' next contention that the trial court erred in refusing to admit the testimony of their witness, John Reinert.

On an offer of proof, Reinert testified that in the early part of May, 1968, as he was buying ice cream at the drive-in, he observed a southbound auto make a sharp right turn off River Road into Cherry Street, the eastbound one-way street, after which the auto veered to the left and came into the picnic area where it struck the bicycle rack and pushed it into a bench in the picnic area. According to the witness, who also testified that the condition of the premises was the same at the time of both occurrences, he spoke to the driver and was told that when the latter began his turn into Cherry Street he discovered that it was a one-way street and tried to correct his mistake. Following the incident, Reinert said he spoke to the person on duty at the drive-in about the dangerous location of the picnic benches, and was advised that such person was aware of the dangerous condition and had spoken to the property owners about it. In refusing to permit the testimony of Reinert to be given to the jury, the trial court, confining itself to a consideration of the instrumentalities or things involved, reasoned that there was no common cause because the brakes had failed on the car involved in the present accident, whereas the prior accident had occurred because the driver had been confused about the one-way street.

■■  On the record we conclude that the trial court's analysis was not justified. The vehicles involved in both occurrences attempted right turns from River Road onto Cherry Street and, regardless of the cause, the fact remains that both drivers were unable to control their vehicles on the turn and ended up in the picnic area. Moreover, apart from the instruments involved, a common cause of the end results of both occurrences, *viz.*, the striking of the bicycle rack and a table in the picnic area, was the condition of the drive-in premises which permitted the unimpeded passage of vehicles into the picnic area. In our opinion, the testimony of Reinert was admissible to show both the dangerous and unsafe condition of the defendant Cock Robin's premises and the latter's knowledge of such condition.

■■■  Cock Robin argues, however, that the testimony of the prior occurrence was properly excluded for the reason that its negligence in failing to erect barriers, if any, was not a proximate cause of the death and injuries for which recovery is sought. This is so, it is said, because the time, place and circumstances under which vehicles go out of control are unforeseeable, and because the lack of a barrier or other device did nothing more than to create a condition which made injury possible by the subsequent, independent act of a third person. It may be agreed that one of the tests of proximate cause is the defendant's duty to reasonably foresee or anticipate the consequences of his own negligence, and that a negligent omission or act is not the proximate cause of an injury or damage so as to impose liability, unless such injury or damage is one which could have been foreseen or fairly and reasonably anticipated and guarded against as a probable result thereof. ( *Cohn v. Petroleum Heat & Power Co.,* 44 Ill.App.2d 23; *Ostergard v. Frisch,* 333 Ill.App. 359; *Ney v. Yellow Cab Co.,* 2 Ill.2d 74.) Further, it cannot be denied that if the negligence of a defendant only furnishes a condition and that condition causes an injury by the subsequent act of a third person, the creation of the condition is not the proximate cause of an injury; however, it is the rule that the subsequent act, in order to break the causal connection, must be one, the intervention of which was not probable or foreseeable by the first wrongdoer. ( *Ill. Central R.R. Co. v. Oswald,* 338 Ill. 270; *Merlo v. Public Service Co.,* 381 Ill. 300.) Thus, it may be conceded that defendant Cock Robin's arguments spring from a sound basis in the law, and that the determinative factor in deciding whether the testimony of Reinert was relevant or irrelevant to prove proximate cause, is whether Cock Robin, or any prudent person, could have foreseen or reasonably anticipated that an automobile out of control could enter into the picnic area from its unprotected north side and cause injury and damage.

To support its position as to "unforeseeability" and "the condition of

premises," Cock Robin places its reliance upon principles expressed by a Texas Court in *Watkins v. Davis* (1958), 308 S.W.2d 906. In that case a truck which had been parked outside a grocery store with its motor running suddenly lunged forward and crashed into the store where it pinned the plaintiff, a customer, against a wall. Litigation ensued and one of the theories pursued by the plaintiff was that the failure of the store owner to have a curb was negligence and a proximate cause of plaintiff's injuries. In rejecting this theory and reversing a judgment for the plaintiff, the reviewing court, after referring to authorities relating to proximate cause and the element of foreseeability, stated in the course of its opinion at page 909:

> "* * * While in City of Dallas v. Maxwell, supra, the negligence charged was lack of a barrier to prevent an unmanageable automobile from plunging into a ravine adjacent to the street, the same principle of nonforeseeability is controlling in the situation at hand; the court holding a Maxwell's case that: 'The breaking of the steering gear, and not the failure to erect a barrier, was the proximate cause of the injuries sued for, in our opinion. In fact, we think the lack of a barrier was, in legal contemplation, not a cause at all, but merely a fortuitous condition.'
>
> * * *
>
> The weight of authority, which to our mind is in accord with sound principles, is to the effect that, where the injury to the traveler results from loss of entire control and direction from an animal or machine, the occurrence falls within the domain of the unusual and extraordinary, and therefore, in contemplation of law, of the unforeseeable."

██ While we believe, as the Texas court specifically noted, that the "facts" and "circumstances" of the particular case controlled and justified the application of the stated principles, we are not persuaded by defendant Cock Robin's posture of an inflexible rule that injury by an out-of-control vehicle is never foreseeable, and its apparent conclusion that the failure to erect a barrier is, in all cases, a condition rather than a concurrent cause. As stated by the court in *James v. Bank of Highland Park*, 82 Ill.App.2d 118 (Abst. Op.):

> "The question of proximate cause and foreseeability is not a matter subject to broad applicable rules of law. Rather, it raises a unique question in each specific case because of the attendant circumstances which may or may not have occasioned the injury."

Appropriate, also, is the observation of the court in *Ney v. Yellow Cab Co.*, 2 Ill.2d 74, 81, where the prevalence and usage of the automobile was a factor in the decision to the effect that rules and general principles of

law must "adapt themselves to the gradual changes of trade, commerce, arts, inventions and the exigencies and uses of the country."

■■■ Ordinarily, the question of proximate cause and its element of foreseeability are matters to be determined by the jury. (*Kinsch v. DiVito Construction Co.,* 54 Ill.App.2d 149; *Admiral Oasis Hotel Corp. v. Home Gas Industries, Inc.,* 68 Ill.App.2d 297.) It is well established also that where it could have been reasonably foreseen that some injury might result from the negligent act or omission complained of, it is not essential that the precise consequences which actually resulted therefrom should have been foreseen, nor is it necessary that the exact particulars of the accident which actually occurred should have been foreseen. (*Blue v. St. Clair Country Club,* 7 Ill.2d 359; 28 I.L.P., Negligence, § 105, p. 95, and cases there cited.) Applying these principles to the facts and circumstances peculiar to the instant case, it is our opinion that Reinert's testimony relating to the prior occurrence was relevant and should have been submitted to the jury, and the issues of proximate cause and foreseeability determined under proper instructions. Traffic accidents are a commonplace thing in our present day society, and it is neither rare nor unusual for vehicles to go out of control due to mechanical failures within them. Given the precarious position of the picnic area at an intersection, it cannot be said that all prudent men would agree that Cock Robin could not reasonably foresee the consequences of its omission to erect a barrier, and could not reasonably foresee or anticipate that an out-of-control vehicle could enter into the picnic area.

■■ Plaintiffs next complain that counsel for Cock Robin improperly told the jury to put itself in the position of such defendant, that he also referred to matters outside the record in objecting to an exhibit and that counsel for Zawacki improperly questioned Cholewa about a prior incident involving the brakes on his automobile, the cumulative effect of which was to prejudice plaintiffs and entitle them to a new trial. Although we have thoroughly examined plaintiffs' arguments and authorities, we see little purpose to be served by extending this opinion to discuss these contentions in detail. Since it is our view that the cause must be tried anew as to Cock Robin it is probable that the isolated statements of counsel complained about will not recur and, in our opinion, it is reasonably clear in the context of the record that the question put to Cholewa could not have prejudiced the plaintiffs.

■■ Equally without merit is the contention of plaintiffs that error occurred when the trial court refused to permit them to impeach Zawacki on the basis of inconsistent statements, a situation which arose when he testified he did not know a man named Packer, although the name of the latter was given as an expert witness in interrogatories answered

and signed by Zawacki during discovery procedures. Whether or not Zawacki knew the witness was immaterial to the issues being tried, and it is well settled that it is only as to matters relative to the issues that a witness can be contradicted for purpose of impeachment. *Esderts v. Chicago, Rock Island & Pacific R.R. Co.*, 76 Ill.App.2d 210; *Country Life Insurance Co. v. Goffinet*, 117 Ill.App.2d 338.

■■ For purposes not entirely clear, and although the ruling was favorable to them and granted the precise relief prayed in their complaint, plaintiffs contend that it was error for the trial court to direct a verdict against Cholewa on the issue of liability. The court instructed the jury that the verdict was only directed as to Cholewa on the issue of liability and that the question of damages was still to be considered. The attorney for plaintiffs approved the instruction which was given by the court in conjunction with the direction of verdict. The issue of liability was, however, submitted as to the remaining defendants under instructions specifying the basis for assigning liability as to them. Cholewa filed no answer and made no appearance. Cholewa does not object to the entry of judgment nor does any other party to the case other than plaintiffs in whose favor the judgment was entered. What plaintiffs are saying, in substance, is that recovery of judgment against Cholewa which plaintiffs prayed in their pleadings, is not now desired by plaintiffs, who are asking the court to set aside such judgment and have the whole question of liability of Cholewa again litigated. In our view, the evidence against Cholewa was such that the action of the trial court was in conformity with the rule set forth in *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill.2d 494, and the bare assertion in plaintiffs' brief that they were "prejudiced" thereby presents no basis for us to either inquire into or to overturn the directed verdict.

For the reasons stated, the judgment of the circuit court of DuPage County is affirmed insofar as the defendants Cholewa and Zawacki are concerned, but is reversed as to the defendant Cock Robin, Inc., and the cause is remanded with directions that plaintiffs be accorded a new trial as to such defendant.

Affirmed in part; reversed in part and remanded.

STOUDER, J., concurs.

Mr. JUSTICE DIXON concurring in part and dissenting in part:

While I am in accord with the reasoning and result of the majority regarding a new trial as to Cock Robin I must dissent from the view that fails to give a new trial as to all defendants.

Shortly after the accident the defendants, Cock Robin and Zawacki,

got possession of the 1959 Cadillac involved and had it delivered to Packer Engineering for a complete inspection. The expert testified:

> "It was immediately apparent on examining the automobile that the reason for the brake failure was a *falling out of the brake adjuster* * * *.
>
> *The rear brakes were in fair condition.*
>
> By removing the left front wheel we found that the adjusting unit fell out loose on the ground.
>
> The wheel cylinders, mastercylinders, booster unit and all hoses and fittings, all were found to be in working order and the oil level in the reservoir was satisfactory to operate all four wheel cylinders."

About a week before the occurrence the defendant Zawacki had worked on the adjuster which fell out.

At the trial the court denied counsel the right to *cross-examine* Zawacki as to answers made on his interrogatories. On cross the test is not whether the answer sought will elucidate any of the main issues but whether it will to a useful extent aid the jury in appraising the *credibility* of the witness and thereby assessing the probative value of the direct testimony. A wide latitude to test recollection has always been permitted. In general any permissible kind of impeaching matter may be developed on cross since it has for one of its purposes the testing of the credibility of witnesses. Cleary, Illinois Evidence, 2d Ed. Sec. 9.2. *Marut v. Costello*, 34 Ill.2d 125.

The rule, cited by the majority, barring contradiction of a witness as to collateral matters merely prohibits the calling of other witnesses or offering of extrinsic evidence to contradict and *does not* bar further examination of the witness himself on the chance that he may change his testimony.

I further believe that in the instant case the matter was not collateral. Matters directly concerning the credibility of a party witness are not collateral. (Cleary, page 140) Facts admissible to discredit a witness as to bias, corruption, or the like are not collateral. (98 C.J.S. Witnesses, Sec. 633; McCormick on Evidence Sec. 47.) Whether a party knows a witness is certainly material.

As to the direction of a verdict against Cholewa, I cannot agree with the majority that this was a *Pedrick* situation. First, there was strong evidence that the cause of the brake failure was a falling out of a brake adjuster, a sudden mechanical failure, and not absence of lining. (Cholewa testified that neither Zawacki or his mechanic told him that he needed new lining on his brakes. They adjusted the brakes and when he drove out he had a full pedal and continued to have a full pedal

until the accident when he had none at all.) Second, I believe that a plaintiff ought to be allowed to try his own case. The motion for directed verdict was made by Mr. Sorensen, the attorney for Cock Robin. *Plaintiff's attorney did object and he further objected to the instruction directing the verdict.* (Abstract pages 185 and 186. Record pages 1233 and 1234.)

The record shows that Cholewa was never defaulted and was present throughout the trial. The first pleading of Cholewa was an appearance *pro se* filed Jan. 4, 1971. He also filed a motion for leave to file an appearance and answer. The *defendant Cock Robin* then moved for a default against Cholewa. *No default was ever taken.* The court simply said, "We will proceed on the basis of the record." Plaintiff's attorney never asked for, did not want, objected to and waived a default if there ever was one to be implied. The default of a party may be waived by the party entitled to judgment and that waiver may be implied. 47 Am.Jur.2d, Judgments Sec. 1161.

The majority seem to feel that plaintiffs were not prejudiced since they got a judgment against Cholewa (who was not insured and has not 5 cents to his name). If there was no prejudice to plaintiffs why did Cock Robin seek the directed verdict? The prejudice is obvious.

These children did not have a fair trial and can not have a fair new trial against Cock Robin unless Zawacki and Cholewa are parties.