Peter Scardina, Administrator of the Estate of Joseph Scardina, Deceased, Plaintiff-Appellant, v. Dr. Michael J. Colletti, Defendant-Appellee, and Norwegian American Hospital, a Hospital Corporation, Defendant-Appellee.

Gen. No. 49,659.

First District, Third Division.

October 14, 1965.

481

James A. Thompson, of Chicago, for appellant.

Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago (Charles M. Rush and John M. O'Connor, Jr., of counsel), for appellee, Dr. Michael J. Colletti; Lord, Bissell & Brook, of Chicago (Jay M. Smyser and William P. Butler, of counsel), for appellee, Norwegian American Hospital.

MR. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court.

The plaintiff, Peter Scardina, administrator of the estate of Joseph Scardina, deceased, brings this appeal from the judgment entered on the court-directed verdict finding the defendants "not guilty" at the close of the plaintiff's evidence.

Two issues are presented to this court by this appeal: whether the motion for a directed verdict was properly granted, and whether error was committed in refusing to allow the plaintiff to amend his complaint.

The complaint charged Michael J. Colletti, a doctor, with negligently operating on Joseph Scardina in that the doctor failed to ligate a severed blood vessel which resulted in profuse internal bleeding and required a re-operation by another physician. The Norwegian American Hospital was charged with negligently failing to provide adequate lighting facilities and proper equipment in its operating room.

At the trial four witnesses testified: Peter Scardina, the deceased's son; Doctor Colletti, the defendant; Doctor Lichtenstein, who re-operated on the patient, and a woman who took care of him after he came home from the hospital.

Peter Scardina testified that on March 5, 1959, he took his 50 year old father to the Norwegian American Hospital for a hernia operation. At about 7:00 or 8:00 p. m. on March 6, 1959, he received a call from a nurse summoning him to the hospital. Upon entering a room he saw Doctor Colletti and Doctor Lichtenstein conversing. He heard Lichtenstein ask: "What happened," and Colletti answer: "There wasn't enough lighting, it was dark in there. I must have cut a blood vessel."

Doctor Colletti was called as a witness under section 60 of the Civil Practice Act. He testified that he had operated on Joseph Scardina in 1952 for a right inguinal hernia and that his condition following the operation

was very good. In February 1959 he examined Joseph who complained of a swelling bulge in his left inguinal region. Doctor Colletti had him admitted to the Norwegian American Hospital on March 5th and operated on him the next morning.

Doctor Colletti denied making the remark related by Peter Scardina. He testified that the operating room was like any other operating room with adequate lights, "an overhead light with a strong beam that hits into the operative field," plus any number of lights which could be spotted in different directions as needed. An intern assisted in the operation. He was under Doctor Colletti's direction and control at all times. During the operation blood vessels were cut, as is always done in surgery. Any vessel that was cut was clamped and then ligated. If a cut blood vessel faced Colletti, he tied it; if one faced the intern, he tied it, but under Colletti's supervision. After correcting the hernia and determining that the surgical field was dry, the doctor closed the wound. The plaintiff's attorney examined the doctor on those points:

"Q [Y]ou have the final determination as to whether all of these [blood vessels] are actually tied off before you close the wound?
A That's right.
Q And in your opinion this wound was dry indicating no bleeding out of any of these veins before you closed the wound?
A That's right, sir.
Q Is it possible, Doctor, that one of these veins was cut and not tied off?
A No, sir."

Later on that day the doctor received a call from the hospital which indicated that the patient had gone into shock. He went to the hospital and found that the patient's pulse was rapid and he had a swelling in his left flank; his blood pressure was down considerably and he

had perspired quite a bit and lost a lot of fluids. Prior to the doctor's return to the hospital the intern had been notified about the patient's condition and 300 c.c. of plasma was given.

Colletti called a Doctor Triolo and Doctor Lichtenstein into consultation. Doctor Lichtenstein thought that the patient's low blood pressure and loss of blood might be caused by a blood vessel leaking in the original incision. It was decided to re-operate. After the initial 300 c.c. of plasma and prior to the reoperation, approximately two and a half quarts of blood were given to the patient. Doctor Colletti said that even though these amounts were given this did not mean that the patient had lost that much blood. He explained that much of it was absorbed into the circulatory system; that when in shock a patient's veins dilate and hold more blood than when he is normal.

Both Doctor Colletti and Doctor Lichtenstein testified about the second operation, which was performed by Lichtenstein with Colletti assisting him. Lichtenstein said the lighting in the operating room was adequate. The stitches were cut and the wound reopened. Nothing in particular was found in the area of the left side where the operation had taken place; there was some blood but not fresh blood. The abdomen was then opened and explored and a large blood clot evacuated. A blood vessel $\frac{1}{25}$th of an inch in diameter was found which had been bleeding; it started to bleed again when the clot was removed. The vessel was in a loop of the bowel that had been related to the hernia and which had been returned to the abdomen. Lichtenstein clamped it, put on a ligature and closed the incision.

Doctor Colletti said it was most likely that the blood vessel had been cut but he didn't think that he or the intern had missed seeing it; that all precautions are taken in dissection and all bleeding points are clamped

486

and the severed blood vessels are then ligated at both ends. He testified it was not usual to find internal bleeding after a herniorrhaphy, but that it was one of the complications of surgery. He said he had performed 300 hernia operations and this was the first time post-operative bleeding had occurred.

Doctor Lichtenstein said he could not tell whether the bleeding vessel had been torn or cut but the presumption was that it must have been cut. He stated that he had performed "tens of hundreds" of hernia operations and that what had happened was one of the complications of a hernia operation. It had happened to him a few times in 35 years of surgery. He went on to say that "they [blood vessels] don't always bleed at the time you are working and cut them. A vessel will frequently contract down to the point where no bleeding occurs." He stated that a bleeding vessel $\frac{1}{25}$th of an inch in size is easily visible, however, whether the vessel in question would have been visible during the course of the original operation, Doctor Lichtenstein answered: "It might have been. That's all speculative. It might have even had a ligature on it so that it wasn't bleeding at the time. It's possible that the ligature may have slipped off. That's one of the accidents of surgery, too." He stated that a ligature could be properly applied to a vessel and that it could bleed later—that the vessel might contract and slip out of the "noose" or ligature.

The test by which a plaintiff's evidence is judged when subjected to a motion for a directed verdict is whether there is any evidence or reasonable inference arising from the evidence, tending to prove the cause of action alleged in the complaint. The court must decide if the evidence fails as a matter of law to support the complaint. It becomes such a question of law only where the evidence is such that all reasonable men would reach the same conclusion or where there is a total failure

to prove one or more of the elements necessary to the cause of action. When the evidence is considered in its most favorable aspect to the plaintiff and there is a total failure to prove a necessary element of his case, the motion for a directed verdict should be sustained. Brill v. Davajon, 51 Ill App2d 445, 201 NE2d 253; Murad v. Witek, 48 Ill App2d 137, 199 NE2d 809; Graham v. St. Luke's Hospital, 46 Ill App2d 147, 196 NE2d 355; Wojtowicz v. Sarno, 45 Ill App2d 223, 195 NE2d 218. The question in this case is whether the plaintiff's evidence proved or tended to prove the elements of his cause of action.

■■ In a malpractice action a physician will be held responsible for injuries resulting from his want of reasonable care, skill and diligence in his practice. The plaintiff must prove by affirmative evidence that the defendant was unskillful or negligent and that his want of skill or care caused injury to the plaintiff. It is not enough to prove that he made a mistake or that his treatment harmed the plaintiff; proof of a bad result or mishap is no evidence of lack of skill or negligence.

■■ Generally, it is necessary for a plaintiff to show by expert testimony not only that the injury occurred, but that such an event does not ordinarily occur in the normal course of events without negligence. Graham v. St. Luke's Hospital, supra, pp 156, 157; Gault v. Sideman, 42 Ill App2d 96, 101, 102, 191 NE2d 436. The so called "common knowledge" and "gross negligence" exceptions to the requirement of expert testimony are applicable if the negligence of the physician is so grossly apparent or the treatment is such a common occurrence that a layman would have no difficulty in appraising it. Neither exception applies to the present case.

■ Both doctors testified that post-operative internal bleeding is a complication of surgery. Even though Colletti stated that most likely he had cut the vessel in

question, he unequivocally asserted that all vessels had been ligated before the wound was closed. While Lichtenstein presumed that the vessel in question had been cut, he was not sure what had caused it to bleed as it did. He pointed out that it could have been ligated and that subsequently the vessel could have contracted and slipped out of the ligature. The speculation that Colletti failed to see the bleeding vessel before closing the wound is rebutted by Lichtenstein's statement that a bleeding vessel of that size is easily visible, by his opinion that a vessel will frequently contract to the point where no bleeding occurs after it is cut and by Colletti's statement that it was not possible that he or the intern failed to tie each vessel that had been cut. The record is void of any evidence that the bleeding vessel had not been tied off. There is no evidence that the doctor was guilty of negligence in the performance of the operation or that he did not use proper care or that he was unskillful. The witness who must be regarded as the plaintiff's expert witness, Dr. Lichtenstein, made it clear that Doctor Colletti exercised the degree of care and skill ordinarily employed by a physician or surgeon performing the same type of operation. Having failed to establish important elements of the cause of action by his own witness, and having failed to meet the standard of proof required in malpractice cases the motion for a directed verdict was properly granted.

 As to the charge brought against the hospital, the plaintiff also failed to meet his burden of proof. It was his obligation to prove that the hospital failed to comply with the standards of proper care which guide institutions holding themselves out as devoted to the care and saving of human life, and that this failure resulted in the injury complained of. Wade v. Ravenswood Hospital Ass'n, 3 Ill App2d 102, 120 NE2d 345. The only evidence in the record concerning inadequate operating

room facilities was the statement of Peter Scardina that he had heard Colletti say to Lichtenstein: "There wasn't enough lighting, it was dark in there." This statement was objected to as hearsay insofar as the hospital was concerned. There had been no testimony that Colletti was the agent of or spoke for the hospital and the objection was properly sustained. The statement was admitted as to Dr. Colletti only, therefore, the record is devoid of any evidence adverse to the hospital. All the evidence in the record favors the hospital. The testimony of the doctors, both called by the plaintiff, was that the lighting was adequate and the other facilities normal. Under this state of the record there was nothing else for the trial court to do but to allow the hospital's motion for a directed verdict. And there would be nothing else for this court to do but to affirm the judgment of the trial court except for one other consideration.

The plaintiff had tried to amend his complaint to allege that the defendant hospital had not supplied properly trained assistants to the operating doctor and that these assistants negligently and carelessly failed to notice and tie off severed blood vessels; and that it had not supplied properly trained and able servants to the plaintiff and that these incompetent servants failed to notice and detect the plaintiff's post-operative bleeding.

The motion to amend was first made long after the case was filed and a year after depositions were taken. The case was on the trial assignment call at the time and the assignment judge denied leave to amend; but the motion was denied without prejudice to raise it again before the trial judge. Later the case was placed upon the dormant calendar and the plaintiff renewed the motion. The motion was denied. When the case was sent out for trial the plaintiff again moved to amend. The trial judge denied the motion and stated that the matter had been heard by the assignment judge and that the task at hand was the trial of the cause.

490

 Section 46 (1) of the Civil Practice Act, Ill Rev Stats, 1963, c 110, provides that:

"At any time before final judgment amendments may be allowed on just and reasonable terms, . . . changing the cause of action or defense or adding new causes of action or defenses, and in any matter, either in form or substance, in any process, pleading, bill of particulars or proceedings, which may enable the plaintiff to sustain the claim for which it was intended to be brought or the defendant to make a defense. . . ."

Section 4 of the Act states that it shall be liberally construed so that controversies may be determined according to the substantive rights of the parties. The power to allow amendments should be freely exercised so that a party may fully present his cause of action. Irwin v. Omar Bakeries, Inc., 48 Ill App2d 297, 198 NE2d 700; Davidson v. Olivia, 18 Ill App2d 149, 151 NE2d 345.

██ ██ We feel that the amendment should have been allowed by the assignment judge and by the trial judge. It was first presented long enough before the trial to permit the defendant sufficient time to prepare its defense. If the defendant needed more time, this was within the control of the assignment judge and the plaintiff could not complain if the trial were delayed for this purpose. Further, the motion was renewed while the case was on the dormant trial call and not assignable for trial. When the amendment was before the trial judge he should have taken the responsibility and granted the motion even though it had been denied previously. A trial judge is not bound by the prior order of another judge; he may review the order if in his judgment it was erroneous and he has the duty so to do if changed facts or circumstances make the prior order unjust. Richichi v. City of Chicago, 49 Ill App2d 320, 325, 199 NE2d 652.

The judgment in favor of the defendant Colletti will be affirmed. The judgment in favor of the defendant Norwegian American Hospital will be reversed. The cause will be remanded with directions to allow the plaintiff to amend his complaint.

Affirmed in part; reversed in part and cause remanded with directions.

SULLIVAN and SCHWARTZ, JJ., concur.