WILLARD G. MONTGOMERY I, Adm'r of the Estate of Cora Lee Montgomery, Deceased, Plaintiff-Appellant, *v.* AMERICANA NURSING CENTERS, INC., *et al.*, Defendants.—(THOMAS F. HARMON, M. D., Defendant-Appellee.)

Fourth District   No. 12797

Opinion filed June 17, 1976.

316

Thomas F. Londrigan, of Londrigan, Potter & Billington, of Springfield, for appellant.

Horsley, Kimble, Lott and Surman, of Springfield, for appellee.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

Mrs. Cora Montgomery filed suit for damages allegedly caused by the negligence of Americana Nursing Centers, Inc., and malpractice of defendant, Dr. Thomas Harmon. After a jury trial, the court directed a verdict for Dr. Harmon. The jury returned a verdict against Americana and judgment was entered for plaintiff on that verdict. Willard Montgomery, administrator of the estate of Cora Lee Montgomery, has been substituted as plaintiff on appeal and he contends that direction of a verdict for Dr. Harmon was error. We affirm.

> "The general rule in medical malpractice cases is that the burden is upon plaintiff to prove by expert testimony the proper standard of care imposed upon defendant, and to then prove by affirmative evidence an unskilled or negligent failure to comply with such professional criterion, such acts or omissions thus resulting in injury to plaintiff." *Estell v. Barringer*, 3 Ill. App. 3d 455, 459-60, 278 N.E.2d 424, 428.

■■ An exception to the rule is where the conduct of the doctor is so grossly negligent as to fall within the common knowledge of a layman. (*Estell.*) The trial judge found that there was no expert testimony as to the proper standard of care and that the facts of this case did not fall within the terms of the exception to the rule. A review of the evidence supports this conclusion.

Plaintiff's decedent was an elderly lady who had sustained a fracture of her *left* hip in October, 1969. After her hospital stay she was transferred to defendant Americana Nursing Home in December, 1969, for convalescence. On March 25, 1970, Mrs. Montgomery fell at the nursing home while attempting to seat herself for breakfast. An incident report made that day by an employee of the nursing home noted Mrs. Montgomery's complaints of pain in her *right* knee and hip. Mrs. Montgomery's family doctor, defendant Harmon, was notified. Dr. Harmon testified that he examined Mrs. Montgomery on March 27, 1970. He performed a general physical examination, including an examination

of the hips for evidence of bruising, swelling, pain, possible displacement, or shortening or rotation of the legs. Dr. Harmon testified that Mrs. Montgomery was, at the date of the examination, suffering from bronchitis with coughing, a high temperature and head pains. She had swelling on the right knee. Dr. Harmon ordered x-rays of the knee, which x-rays revealed no fracture.

On April 15, 1970, Dr. Harmon visited Americana and observed Mrs. Montgomery in physical therapy. He noticed then for the first time signs of a possible fracture in the right hip because the right leg was out-rotated and perceptibly shorter than the left leg. He ordered x-rays which revealed a fracture of the right hip. Dr. Harmon testified that he did not have Mrs. Montgomery's head, which she said she had hit during the fall, or right hip x-rayed on March 27, 1970, because his clinical judgment had led him to believe she was suffering only from a knee injury and bronchial pneumonia.

Dr. Harmon acknowledged several medical texts offered by Mrs. Montgomery's counsel as competent authorities. The texts included sections which indicated the likelihood of hip fractures in the elderly and the possibility that injury to the hip might manifest itself as knee pain. Dr. Harmon acknowledged that knee pain might be one of the symptoms of a hip fracture but stated that in this case Mrs. Montgomery's complaint of knee pain coincided with a severe knee injury. Dr. Harmon testified that he had not read the incident report which indicated hip pains, nor was he informed during oral consultation with the nurses attending the patient that she complained of hip pain. The nurses' notes, available to the doctor, made some reference to difficulty with the left leg. Dr. Harmon testified that he relied mainly on oral consultation with nurses and had no recollection of reading the nurses' written reports.

■■ Dr. Harmon's testimony was the only medical testimony offered by either party. His testimony that he made every reasonable check for hip injury other than x-rays is uncontradicted. Since he was called as a witness under section 60 of the Civil Practice Act, plaintiff is bound by his uncontradicted testimony. (*Comte v. O'Neil*, 125 Ill. App. 2d 450, 261 N.E.2d 21.) There is therefore no expert medical testimony that Dr. Harmon's examination violated the proper medical standard of care.

Plaintiff argues that Dr. Harmon's conduct falls under the exception in that his conduct in not ordering an x-ray for this elderly patient is so gross as to be within the common knowledge of a layman. If we were to uphold this suggestion, it would mean that every physician would be required to order complete x-rays of every elderly patient who suffers a fall. Plaintiff cites *Polionos v. Renner*, 190 Ill. App. 416 (abstract opinion), as precedent. In that case an iron radiator had fallen on a 14-year-old boy's leg. Although he realized the leg was injured, the defendant doctor did

not order x-rays but merely manipulated the leg. The court held that no expert testimony was necessary to establish liability. *Polionos* is readily distinguishable since in *Polionos* the doctor knew there was a leg injury while in the present case, according to Dr. Harmon's testimony, he could find no signs of hip injury and was never informed of complaints of hip pain.

██ In *Scardina v. Colletti*, 63 Ill. App. 2d 481, 211 N.E.2d 762, evidence was offered tending to show that the defendant doctor either failed to ligate a severed blood vessel before closing a wound subsequent to surgery or ligated it in a manner that allowed the ligature to slip off. Plaintiff offered expert witnesses who testified that the blood vessel was open when they reopened the wound after post-operative complications. These witnesses did not testify that the open blood vessel was likely to be the result of defendant's negligence. The court held that the "common knowledge" exception to the requirement of expert testimony was not applicable. The same is true in the case at bar. Accordingly, since there was no expert testimony that the defendant doctor violated the proper standard of care, the directed verdict in his favor was proper under the *Pedrick* rule. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14.

Affirmed.

TRAPP, P. J., and GREEN, J., concur.